605 A.2d 657

Annie T. DRUMMOND

v.

Tyrone Leroy DRUMMOND.

No. 986, Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 1, 1992.

Aretha J. Lang, Silver Spring, argued, for appellant.

Stanley H. Katz, Towson, argued (Natalie H. Spector and John N. Spector, P.A., on the brief, Baltimore), for appellee.

Argued before WILNER, C.J., and GARRITY and ROSALYN B. BELL JJ.

ROSALYN B. BELL, Judge.

On October 3, 1990, Tyrone Drummond filed a complaint in the Circuit Court for Baltimore County for an absolute divorce against his wife, Annie Drummond. In his complaint, he listed her address as being in Atlantic City, New Jersey. The summons that was issued specified the Atlantic City address and provided that a written response was due within 30 days [1] after service. According to the affidavit of counsel, service was made on Ms. Drummond at the Atlantic City, New Jersey, address by certified mail on October 9, 1990. The court entered an order of default on November 21, 1990. On November 28, Ms. Drummond filed a motion "to reverse" the order of default, stating she was out of state and needed extended time to retain a lawyer

---

1. Rule 2–321(b)(1) provides:

    "A defendant who is served with an original pleading outside of the State but within the United States shall file an answer within 60 days after being served."

    Thus, Ms. Drummond had 60 days in which to file an answer, instead of the 30 days specified in the summons. There is no suggestion that this was anything but an inadvertent error by the clerk's office.

through Legal Aid. She indicated that she had contacted a Mr. Irvin J. Brodsky. Although no affidavit was filed, we can infer from the circumstances that Ms. Drummond was without support and unable to afford counsel.[2] She claimed that the default was mailed to her parents' home in Atlantic City where she no longer "commutted [sic] from." She added that as of November 28, 1990 she had not received the order of default.

Her motion was denied. Thereafter, she filed what she designated as a motion of "reconciliation" in which she referred to the "illegal time period of separation" and she had moved "back" to Maryland. On January 25, 1991, the day after the denial of what was clearly a request for reconsideration, a hearing was held before a master at which Ms. Drummond appeared. She alleges in her brief that she told the master she needed alimony and that marital property needed to be divided. The master's report is silent on those issues. The only reference that the master made in his report to any property claim by Ms. Drummond is the following:

"I gave Mrs. Drummond an opportunity to vent her feelings in the matter. She stated that there is property in the form of a tractor trailer that she apparently signed for a loan on but was not titled in her name. I think this is probably the crux of the issue."

Apparently, according to the master's statement, an additional hearing was held, as he states:

"Plaintiff's counsel did not notify Mrs. Drummond of the hearing so I took it upon myself to send her a letter on February 4th advising her of the date and time of the hearing. She did not appear."

---

2. Ms. Drummond was represented by counsel at oral argument. Counsel entered her appearance two days before argument. From what we are able to determine, this was the first time Ms. Drummond had an attorney, even though she began seeking one a year-and-a-half earlier.

Although there is no record for this second hearing, we were told at oral argument that it was solely to hear another witness from Mr. Drummond on the divorce issue. Ms. Drummond apparently arrived at the second hearing, but not until after the hearing had been completed. We do not know if Ms. Drummond was ever informed of her right to file exceptions to the Master's Report. We do know that the court granted an absolute divorce on February 26, 1991.

On March 25, 1991, Ms. Drummond filed a pleading entitled, "Notice to Appeals to the Court of Special Appeals of Maryland," moving that we "alter or amend the Memorandum and Order ... filed February 26, 1991." Ms. Drummond raises three issues:

"I.   The Trial Court Committed Reversible Error By Granting An Order Of Default Prior To The Required Answer Date Of Appellant As Required by MD Rule 2–321.

"II.   The Trial Court Committed Reversible Error In Failing to Grant Appellant's Motion To Vacate Order Of Default.

"III.   The Examiner–Master Committed Reversible Error By Not Ruling On Appellant's Request For Alimony And A Division Of The Marital Assets."

We will vacate the judgment. Ms. Drummond's first and second issues are two parts of one contention and we will deal with them as one. Her third contention is not preserved.

## ORDER OF DEFAULT

Appellee filed a motion for default before the expiration of 60 days. He did not serve a copy of that motion or affidavit on appellant. The Rules are silent on mailing of a motion for default, but notice of the entry of a default judgment is required under Rule 2–613(b).

After the default, appellant tried to let the court know why it should set aside the default and why it should reconsider its denial of her request for reconsideration.

Despite appellant's unartful pleading, and regardless of the fact that a careful reading of the file would have unearthed the service error, the default remained intact.

This is not a case where appellant did nothing. She obviously sought counsel, which for several reasons was not available to her. She also sought to have the default set aside. Rule 2–613(c) specifies:

"The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim."

It is followed by (d):

"If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order."

As in *Banegura v. Taylor,* 312 Md. 609, 618, 541 A.2d 969 (1988), the default order was not a judgment; the

"order was interlocutory, because it did not dispose of the entire claim. Rule 2–602.[3] As an interlocutory order, it was subject to revision within the general discretion of the trial court until a final judgment was entered...."

*Banegura,* 312 Md. at 618–19, 541 A.2d 969. Under Rule 2–613(d), if the court finds "there is a substantial and sufficient basis for an actual controversy as to the merits" and it

---

**3.** Rule 2–602(a) provides in pertinent part:
"[A]n order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
(1) is not a final judgment;
(2) does not terminate the action as to any of the claims or any of the parties; and
(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties."

is fair to excuse the failure to have pled, the court shall vacate the order.[4]

Here, appellant filed no affidavit stating the basis for the controversy or why she had not pled as required under Rule 2–311(d).[5] We hold, however, that either the motion to set aside the default alone, or taken together with the motion for reconsideration, contained sufficient information to alert the trial judge that he needed to look at the whole record, which at that time was not that voluminous. Based on our review of the record, he either erred in failing to set aside the default based on the first motion, or abused his discretion in denying the motion to reconsider. Therefore, we vacate his decision and remand for further proceedings.

## ALIMONY AND DIVISION OF ASSETS

Appellant's third issue is not preserved. Appellant has not presented us with a transcript of the January 25, 1991 hearing or the subsequent hearing to which the master referred. Since we are already vacating the judgment, we need not and will not consider this issue.

## THE NEED FOR COUNSEL

A problem to both parties in this case, albeit unraised, is appellant's economic condition and resultant inability to secure counsel. The United States Supreme Court settled the unqualified right to counsel in state prosecutions for serious offenses in *Gideon v. Wainwright*, 372 U.S. 335, 83

---

4. While certainly minimal, appellant did state a basis for an actual controversy by stating in effect that the length of the separation did not meet the statutory requirement.

5. Rule 2–311(d) states in pertinent part:
   "A motion or a response to a motion that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based."

S.Ct. 792, 9 L.Ed.2d 799 (1963). No similar constitutional right has been seriously proposed in civil litigation, although the fundamental unfairness of the position between haves and have-nots was recognized in the late 1960s and found expression in legal aid programs and lawyer referral services.

These programs sought to level the court's playing fields between landlord and tenant, installment seller and consumer, government and the welfare recipient, to name a few. After an initial flurry, these programs came into some disfavor and, as a result, we found again in the late 1980s a large group of poor who could not afford to secure counsel. In response to the current perceived need, the Maryland Legal Services Corporation, Legal Aid in Baltimore, Montgomery County, and Prince George's County, the Bar Association of Baltimore City's *Pro Bono* and Reduced Fee Projects, and Maryland Volunteer Lawyers Service, among others, have become increasingly active. Some of these groups have been funded in part by the creation of the Interest on Lawyer Trust Account (IOLTA) [6] and in kind by the Maryland State Bar Association's and local bar associations' pro bono programs. A 1988 survey conducted by Maryland Legal Services Corporation, chaired by United States Representative Benjamin Cardin, has clearly established what many local pro bono programs already know—that the largest area of unmet legal needs for the poor fall into the family law category. One outgrowth was the establishment of the Advisory Council on Family Legal Needs of Low Income Persons, which was chaired by Maryland Attorney General J. Joseph Curran, Jr.

The Council, in its report entitled "Increasing Access to

---

**6.** Maryland Bus.Occ. & Prof.Code Ann. §§ 10–302 and 10–303 (1989, 1991 Cum.Supp.), provide for the setting up and maintenance of attorney trust accounts. The interest earned on the accounts is payable to the Maryland Legal Services Corporation for the charitable purposes set forth in the Maryland Legal Services Corporation Act, Md.Code Ann. Art. 10, §§ 45A through 45-O (1957, 1990 Repl.Vol.).

Justice for Maryland's Families,"[7] set forth a number of recommendations for the Legislature, the Court of Appeals Standing Committee on Rules of Practice and Procedure, legal services providers, and the courts and administrative agencies. As part of the Council's study, the Unified Family Court Committee investigated the current Maryland legal system and family courts in other states. The Committee

"discovered that low-income litigants encounter obstacles at various stages of the legal process. The first obstacle involves obtaining information about domestic legal rights and remedies. Low-income litigants lack access to information and referral sources to available legal services providers. Further, the enormous caseloads and the limited funds of free or reduced fee legal services providers prevent them from offering increased domestic legal services to Maryland's poor. For this reason, even if low-income litigants succeed in contacting such organizations, their chances of obtaining representation remain slim. This problem forces many low-income litigants to resort to self-help outside the legal system or to attempt to proceed in proper person. At this stage, the litigant faces yet another problem. The circuit court clerk's office cannot provide information, forms, or sample pleadings to clients. Low-income litigants, therefore, must participate in the adversarial system without the necessary information and knowledge to protect their rights and obtain legal remedies available to them. Substantial delays involved in family and domestic adjudication have particularly harsh effects on low-income families. Finally, low-income individuals do not have access to information about post-judgment remedies and the procedures through which they may obtain such relief. Lack of access to or existence of any forms for obtaining post-judgment relief present additional problems for these litigants."

---

7. The report was a joint project of The Maryland Legal Services Corporation and The University of Baltimore School of Law, and was published in March, 1992.

The need for at least some change in the judicial system is apparent as it relates to the Drummonds. Ms. Drummond was fortunate. The procedural error made reversal appropriate in her case. The system may also be fortunate. Instead of becoming another public charge, Ms. Drummond may be found to be entitled to some monetary award and/or some spousal support. Regardless of the merits of Ms. Drummond's or Mr. Drummond's cause, the absence of counsel at the critical time has increased their difficulties and further hindered the effective operation of the judicial system.

JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.