724 A.2d 1264

Jennifer BLISS

v.

Michael WIATROWSKI, et al.

No. 436, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Feb. 26, 1999.

260

Andrew S. Kasmer (Chasen & Boscolo, Chartered, on the brief), Greenbelt, for appellant.

John R. Greene (Cohen, Greene & Wasserman, P.A., on the brief), Annapolis, for appellees.

Argued before DAVIS, SALMON, and SONNER, JJ.

SONNER, Judge.

In this case, we are called upon to decide two issues: 1) whether a plaintiff's insurer can move to set aside an order of default entered against an uninsured motorist for failure to

plead, and, 2) whether the defense of assumption of the risk bars a teenage girl from recovering for injuries received when she was a passenger in a tragic car accident. Because our answer to both questions is "yes," we affirm the judgment of the lower court.

## I.

On the night of December 14, 1990, appellee, nineteen-year-old Michael Wiatrowski, while under the influence of alcohol, drove appellant, Jennifer Bliss, his girlfriend, and two other friends, William Shields and Debbie Upton, in his mother's automobile to the end of Conway Road in Anne Arundel County. Ms. Bliss, who was sixteen years old at the time, was seated in the right front passenger seat, and Shields and Upton were seated in the back. The four had spent most of the afternoon and evening together, drinking beer that they purchased at liquor stores, and spending time at local malls. Later that night, they went to the home of one of Mr. Wiatrowski's friends and did more drinking.

At approximately 11 p.m., the four left to visit an abandoned church, a common practice among some of their friends, who referred to the church as being "haunted" because it was at a remote location and in ruined condition. Ms. Upton, who drank only one beer earlier in the afternoon, suggested that they go to her house instead, but the others convinced her to come along for the ride. Ironically, she was to meet her death in the crash that occurred later.

After leaving the church, they were traveling eastbound on Conway Road back toward Patuxent Road in Gambrills, Maryland. Conway Road is narrow, winding, and dark, with a posted speed limit of 30 m.p.h. Both Ms. Bliss and Mr. Shields testified that they had been driving along Conway Road at 50 m.p.h. Right before the accident, Ms. Bliss faced the back seat to tell a joke to Ms. Upton and Mr. Shields. She testified that they were all laughing when she turned around and saw headlights from an oncoming car, at which point Mr. Wiatrowski veered off the road and struck a tree.

It is not entirely clear what caused Mr. Wiatrowski to lose control of the car. There was testimony that when the other car approached in the oncoming lane, they were headed around a dangerous curve and Mr. Wiatrowski either went off onto the right shoulder to avoid the other car, even though there was no danger of being hit by the other car, or the car went off the road for an unknown reason. Mr. Wiatrowski's version of the accident is that Ms. Bliss overreacted to the oncoming car and grabbed the steering wheel, pulling it in her direction to avoid being hit. In a third account, Mr. Wiatrowski merely lost control of the car and, instead of traveling around the sharp curve, traveled straight into a tree.

Ms. Upton was killed in the collision and Mr. Shields and Ms. Bliss were seriously injured. Ms. Bliss suffered broken facial bones, facial lacerations, a broken right hand, lacerated forearms, contusions to the pelvis and legs, memory loss, a concussion, and shock. Mr. Shields was in a coma for a significant period of time. Mr. Wiatrowski suffered a concussion, chest trauma, and a bruised wrist and ankle.

Officer William L. Johnson of the Anne Arundel County Police Department testified that based on the amount of damage to the car and its occupants, Mr. Wiatrowski's speed was definitely greater than 30 m.p.h. at the time of the accident. He also stated that when he arrived on the scene he smelled alcohol in the car and on the passengers and saw empty beer cans on the car floor. Medical records revealed that Mr. Wiatrowski's blood alcohol level was 0.10 [1] after the accident. Mr. Wiatrowski subsequently pleaded guilty to "homicide by automobile while under the influence of alcohol," for which he served time in jail.

On December 14, 1992, Ms. Bliss filed a civil suit against Mr. Wiatrowski in the Circuit Court for Anne Arundel County. At the time of the accident, Mr. Wiatrowski was an uninsured

---

1. This blood alcohol level is above the legal limit in Maryland. A blood alcohol level of at least .07 but below .10 is prima facie evidence that a person was driving while under the influence of alcohol. MD. ANN. CODE, [CTS. & JUD. PROC.] § 10–307 (1998).

motorist. Ms. Bliss was living with her mother, Juanita Fairall, who owned an insurance policy with Allstate. In an amended complaint, Allstate was named as a second defendant. Although Allstate filed a timely answer, Mr. Wiatrowski failed to answer the complaint, and on November 1, 1995, Ms. Bliss filed a Motion for Default Judgment against him.

On December 1, 1995, Allstate filed a Motion in Opposition to Default Judgment. After a hearing, the court entered an Order of Default against Mr. Wiatrowski on January 26, 1996. On February 23, 1996, Allstate filed a Motion to Vacate Default Judgment. After another hearing on June 19, 1996, the court (Thieme, J.) granted Allstate's motion and vacated the default judgment on June 28, 1996.

The parties proceeded to trial (Loney, J. presiding). Ms. Bliss and Allstate were represented by counsel and Mr. Wiatrowski represented himself. The jury found first that Mr. Wiatrowski was negligent and then found that although Ms. Bliss was not contributorily negligent, she had assumed the risk of the danger of Mr. Wiatrowski's actions. On December 8, 1997, Ms. Bliss moved for Judgment *non obstante verdicto* or, in the alternative, a new trial. The court denied her motion on January 15, 1998 and she appealed. She asks this Court to resolve the following three questions in her favor:

1. Did the trial court err in granting appellee Allstate's Motion to Vacate Default Judgment?

2. Did the trial court err in instructing the jury that it could find that appellant could not recover for her injuries because she assumed the risk of getting in the car with appellee?

3. Assuming that assumption of the risk was properly before the court and the jury, did the trial court err in instructing the jury as to the definition of assumption of the risk as it relates to a child under the age of majority?

## II.

### *Default Judgment*

Appellant argues that the trial court should not have grant-

ed appellee Allstate's Motion to Vacate Default Judgment[2] because 1) Allstate could not move to vacate an order of default entered against Mr. Wiatrowski, and, 2) the actual motion failed to address the reasons for Wiatrowksi's failure to plead. We address each of these contentions separately.

## A.

 A plaintiff may seek a default judgment against a defendant who fails to plead as provided by the rules. Md. Rule 2–613. The plaintiff's first step is to file a motion asking the court to enter an order of default against the defendant. *Id.* 2–613(b). After the court enters the order of default, the clerk must inform the defendant of the order. *Id.* 2–613(c). The defendant may then "move to vacate the order of default within [thirty] days after its entry." *Id.* 2–613(d). If the motion to vacate is not filed, "the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought." *Id.* 2–613(f). An entry of default **judgment** is a final judgment and is subject to the general revisory power of the court only with respect to the relief granted; however, an **order** of default is interlocutory in nature and can be revised by the court at any time up until the point a final judgment is entered. *Id.* 2–613(g); *Michaels v. Nemethvargo*, 82 Md.App. 294, 298–300, 571 A.2d 850 (1990).

Ms. Bliss argues that Mr. Wiatrowski did not file a motion to vacate the order of default entered against him within the thirty-day time frame, and thus, the court should not have set aside the order of default. She also contends that, although Allstate did file a timely motion to vacate the order of default, Allstate did not have standing to file the motion and raise certain defenses on behalf of Mr. Wiatrowski. According to Ms. Bliss, a plain reading of the rule indicates that only "the defendant," meaning the defendant against whom the order of default was entered, is entitled to move to vacate the order. *See* Md. Rule 2–613(d).

---

**2.** Although Allstate used the term "default judgment," it was really moving to set aside an order of default.

After a hearing, the court held the matter *sub curia.* Nine days later, the court issued a ruling stating that the order of default was not a final judgment, but interlocutory in nature, because it did not dispose of all the claims against all of the parties. Thus, the court reasoned it had the authority to revise it pursuant to Rule 2–602(a).[3] The court cited *,Hanna v. Quartertime Video & Vending Corp.,* 78 Md.App. 438, 553 A.2d 752 (1988), which the Court of Appeals later affirmed at 321 Md. 59, 580 A.2d 1073 (1990), to support its decision. In exercising the right to revise the order, the court considered both Allstate's motion and a letter, written by Mr. Wiatrowski and sent to the court one week before the default judgment hearing, stating that he wished to participate in the suit and believed that Ms. Bliss caused the accident.

In *Quartertime Video,* the Court of Appeals confirmed that when default judgment is entered against one defendant, but the case is still pending against other parties to the action, Rule 2–602(a)(3) applies, making the default judgment subject to the full discretionary revisory power of the trial court. 321 Md. at 66, 580 A.2d 1073. Thus, according to the court, even though an order of default was entered against Mr. Wiatrowski, the case was still pending against Allstate, so the court's power to revise the order was not limited by Rule 2–613(f), which restricts a court's authority to review only the relief granted, or Rule 2–535,[4] which applies only to final judg-

---

**3.** Maryland Rule 2–602(a) provides:

> (a) *Generally.* Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action . . ., or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
> (1) is not a final judgment;
> (2) does not terminate the action as to any of the claims or any of the parties; and
> (3) is subject to revision at any time before the entry of a judgment that adjudicates **all of the claims by and against all of the parties.**
> (Emphasis added.)

**4.** Maryland Rule 2–535 states:

ments.[5] *See id.* at 65–66, 580 A.2d 1073. Consequently, the defendant against whom default judgment was entered could move to set aside the order of default and the default judgment beyond the thirty-day window.

We hold that the order of default filed against Mr. Wiatrowski was interlocutory because, as explained *supra,* no final judgment had been entered in the case, and also because the order of default did not dispose of the claims against the remaining defendant. Just as in *Quartertime Video,* where "the default judgment adjudicated only Hanna's rights and responsibilities[,] [t]he rights and liabilities of the [other defendants] remained to be determined," Allstate's rights had not been adjudicated. 321 Md. at 65, 580 A.2d 1073. If we consider Mr. Wiatrowski's letter to be a motion to vacate the order of default, we can rely on *Quartertime Video* and find that despite the fact that Mr. Wiatrowski's letter was not sent to the court within the thirty-day time frame as prescribed by the rules, the order of default was subject to the court's plenary revisory power, so it was well within the court's discretion to set it aside. Furthermore, we note that "a trial judge has broad discretion to modify an interlocutory order where that action is in the best interests of justice." *Michaels,* 82 Md.App. at 299, 571 A.2d 850.

In setting aside the order, however, the court took into account Allstate's motion to vacate the order of default in addition to Mr. Wiatrowski's letter, perhaps because it ques-

---

(a) *Generally.* On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment . . .

(b) *Fraud, mistake, irregularity.* On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

5. The court did not note the distinction between the order of default in Wiatrowski's case and the default judgment in *Quartertime Video;* however, an order of default is by nature interlocutory, so it surely fell within the court's discretion to use the reasoning in *Quartertime Video* to include an order of default, which could be deemed a subset of judgment by default.

tioned whether Mr. Wiatrowski's letter qualified as a motion to vacate under the rule. The issue left unresolved is whether the court could consider Allstate's motion in making its determination. *Quartertime Video* does not address this issue because, there, the defendant against whom default judgment was entered was the same defendant who filed the motion to set aside the order of default and the default judgment. The question we then pose is: Can Allstate, as the plaintiff's uninsured motorist carrier, properly file a motion to vacate an order of default or default judgment on behalf of a defendant who is an uninsured motorist?

 Under the Maryland uninsured/underinsured motorist statutory provisions,[6] an insured, who has been injured or incurred damages as a result of a collision with an uninsured or underinsured motorist, may bring either a contract action against his or her insurer or a tort action against the uninsured or underinsured driver. *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 170, 582 A.2d 501 (1990). Under the second option, when the insured notifies the insurer of the lawsuit, the issues of liability and damages are resolved in the same action. *Id.* at 173, 582 A.2d 501. The plaintiff's insurer is entitled to be a party to the lawsuit and has a right to intervene immediately. *Waters v. USF & G*, 328 Md. 700, 718 n. 9, 616 A.2d 884 (1992). In fact, the insurer has a right "to defend against the insured's tort claim ... regardless of whether the uninsured motorist is defending or not." *Nationwide Mut. Ins. v. Webb*, 291 Md. 721, 738, 436 A.2d 465 (1981).

---

**6.** Section 19–509(c) of the Insurance article of the Maryland Annotated Code requires:

In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle ...

The Court of Appeals has held that when an insurer does not intervene in a lawsuit maintained by its insured against an uninsured/underinsured driver, despite having received notice of the suit, the insurer will be bound by determinations as to liability and damages as a result of the suit. *See id.* The notion of a binding judgment promotes judicial economy by reducing litigation expenses and obviating the need for a second lawsuit. *Id.* The Court, in *Nationwide Mutual Insurance v. Webb,* went on to state:

> Since, under the uninsured motorist statute and our intervention rules, the insurance carrier has a right to intervene in the tort action and to assert against the plaintiff insured any defenses which it has relating to tort liability or damages, **regardless of whether the uninsured motorist raises such defenses or defends at all,** the occurrence of "collusive judgments" is unlikely.

*Id.* at 739, 436 A.2d 465 (emphasis added).

The Court of Appeals's *Nationwide Mutual Insurance v. Webb* opinion affirmed the portion of the Court of Special Appeals's *Nationwide Mutual Insurance v. Webb* decision, holding that a plaintiff's insurer, who received notice of the plaintiff's suit against an uninsured motorist, yet failed to intervene in the suit, could be bound by a default judgment order entered against the uninsured motorist. The Court of Special Appeals stated that "the 'public policy' bar [to relitigating the same issues] even extends to cases concluded by default judgments wherein the issue could have been litigated. Although obviously not 'litigated,' issues determined by default judgment are nonetheless conclusive." 44 Md.App. 547, 553, 409 A.2d 1127 (1980).

Applying this reasoning, if an insurer can be bound by a default judgment order entered against an uninsured motorist, then the insurer should have the power to move to set aside the order of default and the default judgment, as its liability exposure hinges on the uninsured motorist's culpability. In fact, for the insurer to defend itself by arguing that the uninsured motorist is not liable for the plaintiff's injuries, "it

must assume the role of the uninsured motorist. Any coverage defense based upon a liability determination is necessarily a derivative one. To the extent of that defense, the insurer has an interest mutual with that of the uninsured motorist and becomes therefore a 'privy' of the uninsured." *Id.*

Allstate's potential exposure as the uninsured motorist carrier was dependent upon whether Mr. Wiatrowski was found to be liable. We find that as the plaintiff's insurer and the uninsured motorist's interests are inextricably intertwined, fairness dictates that the insurer be able to step into the shoes of the uninsured motorist and file a motion to vacate an order of default or default judgment on the uninsured's behalf. This ruling creates a relationship that is legally similar to the relationship of an insured motorist and its insurer. If Mr. Wiatrowski had been insured, his insurer would have had a duty to defend him, so it would have had the authority to set aside the order. *See Sullins v. Allstate Ins. Co.*, 340 Md. 503, 509, 667 A.2d 617 (1995). We find that the same is true for the plaintiff's insurer acting under the uninsured/underinsured motorist statutory provisions. We thus hold that it was within the court's discretion to consider Allstate's motion to vacate the order of default entered against Mr. Wiatrowski. The result is consistent with the policy to exercise such discretion liberally "lest technicality triumph over justice." *Board of Nursing v. Nechay*, 347 Md. 396, 408, 701 A.2d 405 (1997).

## B.

Appellant next asserts that in its Motion to Vacate Default Judgment, Allstate failed to state reasons for Wiatrowski's failure to plead as required by Rule 2-613(d). Subpart (d) specifically mandates that the motion to vacate the order of default "state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." Moreover, subpart (e), which is closely related to subpart (d), states that if "the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order."

The court below found that the allegations set forth in paragraph three of Allstate's motion complied with 2–613(d) and (e) and the Court of Appeals's interpretation of these subsections in *Carter v. Harris*, 312 Md. 371, 539 A.2d 1127 (1988). Once again, we agree with its finding.

In *Carter*, the defendant merely stated that she had "a good and meritorious defense to the cause of action" in her motion to vacate. *Id.* The Court held that this statement was "a mere conclusory allegation" that gave the court no information upon which to determine whether an actual controversy existed and, as a result, the defendant's motion was not in compliance with the rule.

In our case, Allstate alleged in its Motion to Vacate that it was unable to question Wiatrowski until February 23, 1996; it had to travel to the Baltimore County Detention Center to interview him; and Wiatrowski provided Allstate with information that contributed to a viable defense by saying that a vehicle came at him in his lane of traffic and that Ms. Bliss grabbed the steering wheel causing the vehicle to veer off the road. Mr. Wiatrowski also wrote the court a letter dated June 10, 1996, in which he stated that he believed Ms. Bliss was at fault and caused the accident.

The court's decision to grant the motion to vacate, in light of this information, was not an abuse of discretion. Allstate's motion alleged specific facts, and, in conjunction with Mr. Wiatrowski's letter, indicated that a meritorious defense may exist.

## III.

### Assumption of the Risk

Ms. Bliss next argues that the court erred in allowing the defense of assumption of the risk to go to the jury. To prove that the plaintiff assumed the risk of a defendant's negligence, the defendant must show that 1) the plaintiff had knowledge of the risk of danger; 2) the plaintiff appreciated the nature of the risk of danger; and 3) the

plaintiff voluntarily encountered the risk of danger. *ADM Partnership v. Martin*, 348 Md. 84, 91, 702 A.2d 730 (1997); *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 630, 495 A.2d 838 (1985). Assumption of the risk defeats recovery for a plaintiff in Maryland as "it is a previous abandonment of the right to complain if an accident occurs." *Schroyer v. McNeal*, 323 Md. 275, 281, 592 A.2d 1119 (1990) (citing to *Warner v. Markoe*, 171 Md. 351, 359–60, 189 A. 260 (1937)).

Ms. Bliss has three arguments to support her theory that the court should not have allowed the jury to consider the defense of assumption of the risk. First, she contends that the defense of assumption of the risk does not apply when a defendant's negligence is based on the statutory offense of driving under the influence of alcohol, because allowing a defendant to escape liability when the plaintiff knew that the defendant was violating a statute defeats a purpose of the statute. Second, she argues that, because Mr. Wiatrowski's failure to abide by the posted speed limit, not his alcohol consumption, was the proximate cause of the accident, whether she knew Mr. Wiatrowski was intoxicated could not serve as a basis for her assuming the risk. Lastly, Ms. Bliss argues that there was insufficient evidence for a jury to find that she assumed the risk. These arguments are without merit.

 There is no Maryland law that prohibits application of the defense of assumption of the risk in cases where the defendant's negligence relies on a statutory violation. On the contrary, it is well established in Maryland that assumption of risk may bar recovery by a passenger in a car driven by an intoxicated driver, if the passenger knew or should have known of the driver's condition, and if the driver's negligence, due to the intoxication, is a proximate cause of the accident. *Baltimore County v. State, Use of Keenan*, 232 Md. 350, 366, 193 A.2d 30 (1963).

 In this case, the jury could have reasonably concluded that Mr. Wiatrowski's intoxication was a proximate cause of the accident. Medical records revealed that his blood alcohol level was .10 after the accident. Mr. Wiatrowski, Ms. Bliss,

and Mr. Shields all testified that they all had been drinking a significant amount of beer that night. Mr. Wiatrowski subsequently pleaded guilty to "homicide by automobile while under the influence of alcohol." In light of this evidence, it was not unreasonable for the jury to have found that Mr. Wiatrowski's intoxication was a proximate cause of the accident.

 A jury could also have found that Ms. Bliss was aware that Mr. Wiatrowski was intoxicated, knew about the danger of riding with a drunk driver, yet assumed that risk by voluntarily getting into the car with Mr. Wiatrowski based on several facts that came out during the trial: she was with Mr. Wiatrowski when he purchased alcohol that night; she observed his heavy drinking throughout the night; she had been in a car accident two years earlier where alcohol use had been a factor; she testified that her mother asked her not to ride with people who had been drinking alcohol; and she was aware that a person's reaction time was not as quick after drinking alcohol. Despite this knowledge, she chose to ride with Mr. Wiatrowski. Clearly, there was ample evidence from which the jury could have concluded that Ms. Bliss assumed the risk of the danger in riding with Mr. Wiatrowski.

## IV.

### Jury Instructions

 Appellant's final argument is that the court's jury instruction on assumption of the risk was incorrect because the court gave the instruction for both adults and children. According to appellant, giving both instructions confused the jury and affected the verdict.

The court stated the following instruction on assumption of the risk:

> Now, assumption of the risk, or contributory negligence, may bar recovery by a guest passenger of a drunken driver, who knows or should know of the driver's condition, if the driver's negligence, due to intoxication, is the cause of the accident causing injury.

274

▄▄▄▄▄▄▄▄▄▄▄▄▄▄

\* \* \* \*

A child, however, is not to be held to the same standard or degree of care that an adult would have used. The child is to be held to that standard or degree of care which ordinary prudent children of similar age, intelligence, experience and development, would have used under the same circumstances.

In other words, a child is not to be held to the same standard, or degree of care that an adult would have used. A child should be deemed to have assumed the risk if another child of similar age, intelligence, experience and development, would have acted differently, under the same circumstances.

Now, a person who with full knowledge and understanding of an existing danger, voluntarily chooses to expose himself or herself to that danger, cannot recover for injury resulting from that danger.

We do not agree that this "double-instruction" was error. This instruction accurately sets forth the separate standard of care for minors. *See State ex. rel Taylor v. Barlly,* 216 Md. 94, 140 A.2d 173 (1958); *Neas v. Bohlen,* 174 Md. 696, 199 A. 852 (1938). The court's method of explaining the separate standard of care was neither misleading nor confusing.

*JUDGMENT AFFIRMED;*

*APPELLANT TO PAY COSTS.*