807 A.2d 1201

**HOLLY HALL PUBLICATIONS, INC. et al.,**

**v.**

**COUNTY BANKING AND TRUST COMPANY.**

**No. 1661, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 26, 2002.

Melvin J. Sykes (David P. Sutton, on the brief) Baltimore, for appellants.

Eric S. Schuster (Jonathan A. Steinberg and Gebhardt & Smith, on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and JAMES R. EYLER, ROBERT F. FISCHER (Ret., specially assigned), JJ.

JAMES R. EYLER, J.

The question presented by this appeal is whether the Circuit Court for Cecil County abused its discretion in refusing to vacate an order of default entered against Holly Hall Publications, Inc. and Bonnie Cruikshank–Wallace, defendants and appellants, in favor of County Banking and Trust Company, plaintiff and appellee. We shall answer that question in the affirmative.

## Factual Background

On February 24, 2000, appellee filed a complaint in the Circuit Court for Cecil County against appellants and Thomas Neuberger, trustee of the Wallace Family Trust. By way of brief background, appellee had made various secured loans to Great Christian Books, Inc., a now defunct company, and Hibbard and Hibbard, a Delaware general partnership. The loans to Hibbard and Hibbard were guaranteed by Great Christian Books, Inc., and the loans to Great Christian Books, Inc. and Hibbard and Hibbard were guaranteed by William Wallace, husband of Bonnie Cruikshank–Wallace. Following a default on the obligations, in two proceedings filed in the Circuit Court for Cecil County, appellee obtained confessed judgments against Great Christian Books, Inc. and William Wallace. William F. Riddle appeared as counsel for Great Christian Books, Inc. and William Wallace in the confessed judgment actions and also appeared as counsel for appellants in the action before us.

In the complaint filed in the action before us, appellee alleged that Great Christian Books, Inc. and William Wallace fraudulently conveyed assets, subject to appellee's lien, to the named defendants. *See* Md.Code Ann. (2000 Repl.Vol.), Com. Law II, §§ 15–204 to 15–207. Appellee also alleged that William Wallace transferred assets to Bonnie Cruikshank–Wallace that were prejudicial to the creditors of William Wallace, in violation of section 4–301(d)(2) of the Family Law Article. Md.Code Ann. (1987, 1999 Repl.Vol.), Fam. Law § 4–301(d)(2).

In its complaint, appellee requested an order setting aside the fraudulent and unlawful conveyances, or in the alternative, a monetary judgment in an amount equal to the greater of the value of the property transferred or the consideration received. In two of the counts, appellee requested a declaratory judgment, declaring that (1) appellee had a perfected security interest in the assets of Great Christian Books, Inc. transferred to Holly Hall Publications, Inc., and assets traceable to or derived from those assets, and (2) appellee could enforce and collect a certain indebtedness owed by Holly Hall Publications, Inc. to Great Christian Books, Inc.

On April 3, 2000, a responsive pleading was due on behalf of appellants.[1] None was filed, and on April 5, 2000, appellee filed a request for order of default. On that same day, an order of default was entered by the court. On April 7, the clerk of the court mailed a notice of the order of default to Holly Hall Publications, Inc., and on April 10, the clerk mailed a similar notice to Bonnie Cruikshank–Wallace.

On April 13, 2000, appellants filed a motion to strike the order of default. The motion stated:

1. The plaintiff had contacted counsel for plaintiff and requested that counsel for defendants accept service on behalf of defendants. Plaintiff mailed the complaint and summons for the defendants to counsel for defendants on February 28, 2000.

2. That counsel for plaintiffs and counsel for defendants spoke about the above captioned matter in hopes of settling all open cases between the parties after the deposition of Bonnie Cruikshank–Wallace on March 31, 2000.[2]

---

1. Holly Hall Publications, Inc. maintained its principal place of business in Cecil County, and Bonnie Cruikshank–Wallace was a resident of Cecil County. As residents of Maryland, a responsive pleading was due on their behalf thirty days after service of process. Thomas Neuberger resided in Wilmington, Delaware. As a nonresident of Maryland, a responsive pleading was due on his behalf sixty days after service of process.

2. The deposition was taken in the related confessed judgment proceedings.

3. Undersigned counsel prepared an answer and discovery and then inadvertently failed to file it with the court. This mistake was not discovered until receipt of the court's order of default.

4. That a copy of the request for default filed by plaintiff was not forwarded to counsel for defendants even though plaintiff had knowledge that the undersigned was representing defendants.

5. The defendants contest liability and damages in this case. Defendants assert that Great Christian Books did not make transfers of assets and property to defendants without fair consideration. In addition any transfers were not fraudulent. At no time was the stock of Holly Hall owned by Great Christian Books or William Wallace, Jr. and then transferred to the Wallace Family Trust. The tax return received by the Wallace Family was for the benefit of the Wallace family and was spent on necessities. Plaintiff at no time took any action to seize the refund from the IRS nor was plaintiff entitled to any of the monies from the tax return.

6. That this case is meant to harass defendants and is not likely to succeed on its merits.

7. That defendants have prepared a motion to dismiss to be filed in the above captioned matter.

8. That defendants have prepared an answer to be filed in the above captioned matter.

9. That accordingly, there is a substantial factual and legal basis for a defense to the plaintiffs claim.

10. The defendant is filing a motion to dismiss, an answer, as well as discovery requests upon vacating of the order of default.[3]

On April 24, 2000, appellee filed a memorandum in opposition to the motion to strike the order of default. Pursuant to the two prongs set forth in Rule 2–613(d), appellee argued that (1) appellants failed to provide an adequate explanation

---

3. Minor typographical errors have been corrected for ease of reading.

for the failure to timely respond, and (2) failed to set forth any substantial and sufficient basis for an actual controversy as to the merits. With respect to the first prong, appellee asserted that appellants' admission that the reason for their failure to timely plead was that their counsel simply "forgot" was insufficient to warrant vacating the order. With respect to the second prong, appellee asserted that the motion contained only vague and conclusory responses to the claims.

Hearings were scheduled on the motion for June 20, 2000 and July 26, 2000, but were postponed by agreement of counsel because settlement discussions were taking place. Settlement was never consummated, however, and the motion was heard on May 15, 2001. After the hearing, the court denied the motion.

On May 17, 2001, appellee filed a request to dismiss its suit without prejudice against Thomas Neuberger.[4] The court granted it the same day.

On May 24, 2001, appellants filed a motion to reconsider the denial of the motion to vacate the order of default. The motion was supported by a memorandum and exhibits. The exhibits included affidavits by William Riddle, counsel for appellants, dated May 23, 2001; by Bonnie Cruikshank–Wallace, dated May 9, 2001; and by William Wallace, dated May 22, 2001. The exhibits also included draft settlement agreements, financial statements, the deposition of William Wallace, and correspondence between the parties.

On June 24, 2001, appellee filed a request for entry of judgment for specific dollar amounts, the same amounts that were later entered as judgments. The request was supported by an affidavit by Raymond W. Hamm, Jr., executive vice president of appellee bank.

On September 10, 2001, the court denied appellants' motion to reconsider and entered judgment on one count of the complaint against Bonnie Cruikshank–Wallace in the amount

---

4. Neuberger had filed a timely answer.

of $19,984 and on another count against both appellants in the amount of $722,534.

On September 19, 2001, appellants filed a motion for new trial and a motion to alter or amend the judgment. On September, 27, the court denied the motions. The default judgment entered by the court did not address the declaratory judgment counts. After appellants filed a notice of appeal on October 9, 2001, we remanded the case to circuit court for entry of a judgment disposing of all counts. After final judgment was entered on May 15, 2002, appellants filed a second notice of appeal.[5]

## DISCUSSION

Rule 2–613, which governs the issue in this case, provides in pertinent part:

. . . . . .

(b) Order of Default. If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall

---

5. Prior to oral argument in this case, appellee's counsel sent a letter to this Court advising that the charter of Holly Hall Publications, Inc. "was forfeited by the State of Maryland on November 15, 2001, for failure to file personal property tax returns" and its charter was "forfeited by the State of Delaware on March 1, 2002, for non-payment of franchise taxes." Appellants' counsel took no position with respect to that communication or its legal effect on the corporate appellant.

Appellee has not moved for dismissal of the appeal, and neither party has briefed or asked for an opportunity to brief the issue presented.

We note that Holly Hall Publications, Inc. is a Delaware corporation. We further observe that, while a corporation may be barred from doing business by virtue of forfeiture of its charter, this does not necessarily mean that it cannot be a defendant in litigation and assert certain rights as a defendant. See Del.Code Ann. (forfeiture of charter); section 312 (renewal of charter); section 510 (failure to pay franchise tax); Wax v. Riverview Cemetery Co., 24 A.2d 431 (Del.Sup.Ct.1942) (corporation which has forfeited its charter for nonpayment of taxes is not completely dead).

Because we are not certain we have all relevant facts before us and neither party has briefed the effect of the forfeiture of the charter, we decline to address the issue raised by appellee's letter.

enter an order of default. The request shall state the last known address of the defendant.

(c) Notice. Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(d) Motion by the defendant. The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(e) Disposition of motion. If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(f) Entry of judgment. If a motion was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default. . . . [6]

Md. Rule 2–613.

Appellants contend that both requirements of Rule 2–613(e) were met, and that the court abused its discretion in failing to vacate the order of default. Appellants observe that appellee did not question the existence of a substantial and sufficient basis for an actual controversy as to the merits, one of the subsection (e) requirements, but only argued that it was not equitable to excuse the failure to plead.

Appellee does not expressly concede the first point but does not argue it; rather it argues that the court did not abuse its discretion in refusing to vacate the order of default because

---

**6.** The court may rely on affidavits in determining whether to enter a default judgment. Md. Rule 2–613(f). In addition, a default judgment is not subject to the revisory power under 2–535(a), except as to the relief granted. Md. Rule 2–613(g).

the only reason given for failure to plead on time was that counsel "forgot," which appellee contends is an insufficient reason.

## SUBSTANTIAL AND SUFFICIENT BASIS FOR AN ACTUAL CONTROVERSY AS TO THE MERITS OF THE ACTION

Before focusing on whether it was equitable to excuse the failure to plead, we shall briefly address the showing on the merits. A conclusory statement that merely tracks the language of the rule is insufficient. *Carter v. Harris*, 312 Md. 371, 376–77, 539 A.2d 1127 (1988) (explaining that "motions that fail to state the legal and factual basis for a defense on the merits, or that state no more than conclusory allegations concerning a defense, are inadequate, because they afford the court no real information upon which to make its finding"). In the case before us, the motion to vacate, quoted above, while not a model of clarity, contained more than a conclusory statement. Specifically, it denied that any transfers were made to appellants without fair consideration, and further asserted that no such transfers were fraudulent.

In addition, the affidavits and other documents subsequently placed before the court were sufficient to establish a substantial and sufficient basis for an actual controversy as to the merits. With respect to Holly Hall Publications, Inc., William Wallace, in his affidavit, denied fraudulent transfers. As to Bonnie Cruikshank–Wallace, both she and William Wallace, in affidavits, denied that she received any unlawfully conveyed assets or took part in any such conveyance. *See Berger v. Hi–Gear Tire & Auto Supply*, 257 Md. 470, 475, 263 A.2d 507 (1970) (holding that even if a grantor has a fraudulent intent, this will not vitiate or impair a conveyance unless the grantee participates in the fraudulent intent). Cruikshank–Wallace acknowledged a federal income tax refund in the amount of $19,984, pursuant to a joint return filed with her husband, William, but stated that it was deposited in her personal checking account and spent on necessaries to support her family. *See Pearce v. Micka*, 62 Md.App. 265, 489 A.2d 48

(1985) (holding that "deposits of money used by [debtor] to support his family did not constitute fraudulent conveyances, because, within the meaning of the Uniform Act, there is 'fair consideration' for the payment of money by a debtor to satisfy his obligation to provide necessaries for his wife and children"). In light of the lack of argument with respect to this issue, it is not necessary to go into greater detail. We note, however, that the motion to vacate and subsequent affidavits presented facts and were not limited to conclusory statements.

## EQUITABLE TO EXCUSE THE FAILURE TO PLEAD

The second part of Rule 2–613 requires that the court, in determining whether to vacate an order of default, consider whether "it is equitable to excuse the failure to plead." Appellants' essential position is that determining whether it was equitable to excuse the failure to plead requires a consideration of all the relevant circumstances, and those circumstances require vacating the order of default. Appellee asserts that the only reason given for not filing a pleading on time, at least initially, was that counsel inadvertently failed to file a responsive pleading within the time permitted. Relying primarily on *Banegura v. Taylor,* 312 Md. 609, 541 A.2d 969 (1988), appellee contends that inadvertence of counsel is legally insufficient to require vacating the order of default. With respect to settlement discussions, which according to appellee, were not disclosed as a reason for untimely filing until the hearing on May 15, 2001, appellee points out that (1) the parties were actively litigating the related cases in March, 2001; thus there was no basis for an understanding that there was no need to answer in this case, (2) appellants admit counsel simply "forgot," and (3) the reason is insufficient in any event.

■ First, we note that what is before us is the failure to vacate an order of default, an interlocutory order subject to broad general discretion of the court. *Banegura,* 312 Md. at 618–19, 541 A.2d 969 (citing *Henley v. Prince George's County,* 305 Md. 320, 328, 503 A.2d 1333 (1986)). In Maryland, a

default judgment is not punitive in nature but is akin to an admission of liability. *Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 434, 653 A.2d 934 (1995). Chief Judge Frederic N. Smalkin of the United States District Court for the District of Maryland recently had occasion to review the relevant Maryland cases. *See Royal Ins. Co. of America v. Miles & Stockbridge, P.C.*, 133 F.Supp.2d 747 (D.Md.2001). We agree with Chief Judge Smalkin's reading of those cases and quote liberally from his opinion, at pages 768–69.

> Under Maryland law, a default judgment is not meant to be a punitive measure that penalizes a party for breaching a procedural regulation. See *Curry;* 337 Md. at 434 n. 18, 653 A.2d 934. In distinguishing Maryland from other jurisdictions that enter default judgments as a sanction for procedural violations, the Court of Appeals, in *Curry,* stated that "Maryland law ... does not weigh the balance so heavily against the truth seeking function of adversary litigation." Id. at 434, 653 A.2d 934. The Court of Appeals further explained that "in Maryland, a default judgment is considered more akin to an admission of liability than to a punitive sanction." *Id. See also Hopkins v. Easton Nat'l Bank,* 171 Md. 130, 134, 187 A. 874 (1936) (stating that a default judgment is "the tacit admission by the defendant in default of the truth of the allegations of the bill of complaint as they are averred"), *Pacific Mortgage & Inv. Group, Ltd. v. Horn,* 100 Md.App. 311, 332, 641 A.2d 913 (1994) [**63] ("[a] judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint."); *Gotham Hotels, Ltd. v. Owl Club, Inc.,* 26 Md.App. 158, 173, 337 A.2d 117 (1975) ("failure to plead ... constituted an admission ... of liability for the cause of action set forth in the declaration"). Moreover, Maryland courts have repeatedly held that a trial court's discretion to vacate default judgments "must be exercised liberally, lest technicality triumph over justice." *See, e.g., Eshelman Motors Corp. v. Scheftel,* 231 Md. 300, 301, 189 A.2d 818(1963) (setting aside default judgment where defendant showed it had a meritorious defense and plaintiff did not claim it

would be prejudiced), *Bliss v. Wiatrowski,* 125 Md.App. 258, 267, 724 A.2d 1264 (1999) (stating that the trial court's decision to vacate default judgment was consistent with the policy of liberal exercise of discretion). In fact, a close look at cases involving motions to vacate default judgments confirms that Maryland courts ordinarily exercise their discretion in favor of a defaulting party if the party establishes [**64] that there is a meritorious defense and shows that its fault was excusable. [*769] *See Triplin v. Jackson,* 326 Md. 462, 605 A.2d 618 (1992) (holding that the trial court abused its discretion in refusing to vacate a default judgment where defendants filed affidavits stating they were not served with proper notice), *Eshelman, supra,* 231 Md. at 301, 189 A.2d 818, *Bliss, supra,* 125 Md.App. at 270, 724 A.2d 1264, *Ryan v. Johnson,* 220 Md. 70, 150 A.2d 906 (1959) (finding abuse of discretion in trial court's refusal to vacate default where defendant proffered meritorious defense), *Drummond v. Drummond,* 91 Md.App. 630, 635, 605 A.2d 657 (1992) (reversing trial court's decision to uphold default judgment in which the defendant made effort to have entry of default set aside). In the cases brought to the attention of the Court where the Maryland Court of Appeals upheld a trial court's refusal to vacate a default judgment, the defaulting party either lacked a meritorious defense, or the trial court's discretion was confined under the old Maryland default judgment rule. *See Banegura v. Taylor,* 312 Md. 609, 620, 541 A.2d 969 (1988) [**65] (concluding that trial judge would have been justified in refusing to strike a default judgment, even if it was timely filed, because the defendant failed to allege that any defense existed), *Marine Midland Trust Co. of So. N.Y. v. State Nat'l Bank of Bethesda,* 268 Md. 503, 511–12, 302 A.2d 609 (1973) (affirming trial court's refusal to vacate default judgment under former Maryland default judgment rule because party could not show fraud, mistake, or irregularity). (Footnote omitted)

In *Banegura,* an order of default was entered, no motion was filed within thirty days, and judgment was entered. 312 Md.

at 613–14, 541 A.2d 969. A motion to strike was filed sixty-seven days after the entry of the default order. *Id.* at 619, 541 A.2d 969. The Court held that, under Rule 2–613, the order of default was properly entered but the judgment should not have been entered because there was no satisfactory proof of damages. *Id.* at 618, 541 A.2d 969. Consequently, the Court considered the motion to strike as a request to revise an interlocutory order, similar to the circumstances in the case before us. *Id.* at 618–19, 541 A.2d 969. In *Banegura,* however, although the motion was not filed within thirty days, as required by the rule, the Court considered more important the fact that the defendant did not set forth a legal or factual basis for a defense or even generally allege that a defense existed. *Id.* at 620, 541 A.2d 969. The Court also noted that even if Banegura's version of events were true in holding his attorney primarily responsible for the failure to plead, the judge acted well within his discretion in denying the motion to vacate. *Id.*

Appellee also relies upon *Attorney Grievance Commission of Maryland v. Middleton,* 360 Md. 34, 756 A.2d 565 (2000). In that attorney discipline proceeding, the respondent never answered the petition for disciplinary action. *Id.* at 36–37, 756 A.2d 565. Subsequently, Bar Counsel moved for and the Baltimore City Circuit Court entered an order of default against the respondent. *Id.* at 37, 756 A.2d 565. At the hearing before the Court of Appeals, respondent moved to set aside the findings and conclusions of the hearing judge. *Id.* The Court treated the motion as a request to revise an interlocutory order and "appl[ied] the factors that are to be considered by a circuit court when asked to vacate an order of default entered pursuant to Rule 2–613(b)." *Id.* at 45, 756 A.2d 565. In denying relief, the Court reasoned that respondent did not offer an adequate explanation for his failure to answer the petition nor give any indication of a meritorious defense. *Id.* at 45–48, 756 A.2d 565.

In *Harris v. Carter,* 71 Md.App. 257, 524 A.2d 1250 (1987), also relied on by appellee, this Court held that the trial court erred in striking an order of default. We reasoned that if "the motion fail[s] to disclose either the reason for the failure to

plead or the legal and factual basis of the defense to the claim, then a ruling to grant the motion to vacate is an abuse of discretion." *Id.* at 263, 524 A.2d 1250. Given the absence of a legal or factual basis for a defense of the claim, and without considering appellee's reason for failure to plead, we concluded that the motion to set aside the default judgment should have been denied. *Id.* at 263–64, 524 A.2d 1250. Our decision was later reversed by the Court of Appeals, which held that this Court erred in reversing the trial judge's judgment because even though appellee failed to comply with Rule 2–613's requirement to disclose a meritorious defense, under the circumstances, the trial judge was not compelled to deny the motion to vacate. *Carter v. Harris,* 312 Md. 371, 539 A.2d 1127 (1988).

In *Bliss v. Wiatrowski,* 125 Md.App. 258, 724 A.2d 1264 (1999), we held that the trial court's decision to vacate was not an abuse of discretion given the defendant's allegation of specific facts that indicated that a meritorious defense existed. *Id.* at 270–71, 724 A.2d 1264. In *Bliss,* consistent with all of the other cases relied on by appellee, our analysis focused on whether there was a showing of a meritorious defense.

Yet, the language of Rule 2–613 relevant to the issue before us is whether "it is equitable to excuse the failure to plead." In our view, the word "equitable" in the context of Rule 2–613 means "Just; conformable to principles of justice and right." *Black's Law Dictionary* 558 (7th ed., West 1999). Our reading of the rule and cases interpreting it is consistent with the general rule that the review of an interlocutory order is broad, and discretion should be exercised so as to ensure that justice is done. Such a determination requires consideration of all relevant circumstances in any given case.

Chief Judge Smalkin's 2001 decision in *Royal Ins. Co., supra,* 133 F.Supp.2d at 747, in which the court applied Maryland law in reviewing a trial judge's decision to enter a default judgment, clearly demonstrates the considerations taken into account in applying Rule 2–613 to a specific set of facts. In reviewing the trial judge's decision to enter a default

judgment, Chief Judge Smalkin recognized that the only real issue was whether it would have been equitable to vacate the default judgment. *Id.* at 769. Having established that the defendant had several meritorious defenses available, the Chief Judge focused instead on the reason why the defendant had missed the filing deadline. *Id.* Although the defendant's attorneys admitted that they had consciously missed the filing deadline based on a mistaken belief that the time to respond was tolled while the case was pending in federal court, they attempted to characterize their mistake as a mere "technical failing of timely pleading." *Id.* Yet, despite the court's rejection of the attorneys' characterization and its own labeling of their conduct as careless, the Chief Judge ultimately "conclude[d] that a Maryland appellate court would have reversed [the trial judge's] decision to enter a default judgment." *Id.* at 769–70. The Chief Judge further supported his position by reiterating that the Maryland Court of Appeals has rejected the use of default judgments as punishment for procedural errors. *Id.* at 770.

 This principle has also been applied in a variety of analogous contexts. Technicality, while important, should not be elevated to an exalted status. *Henley v. Prince George's County*, 305 Md. 320, 328, 503 A.2d 1333 (1986) (applying the standard under Rule 2–535(a) to a motion to revise a summary judgment that was interlocutory in nature); *Manzano v. Southern Maryland Hospital, Inc.*, 347 Md. 17, 29–30, 698 A.2d 531 (1997) (explaining that dismissal of a medical malpractice claim based on the violation of a scheduling order is warranted only in cases of egregious misconduct); *First Wholesale Cleaners, Inc. v. Donegal Mutual Ins. Co.*, 143 Md.App. 24, 792 A.2d 325 (2002)(stating that a motion to strike an untimely filed amended complaint should not have been granted absent a showing of prejudice); *Williams v. Williams*, 32 Md.App. 685, 363 A.2d 598 (1976) (holding that dismissal of a claim for failure of plaintiff to be deposed was abuse of discretion).

■ In sum, the Maryland Rules and caselaw contain a preference for a determination of claims on their merits; they do not favor imposition of the ultimate sanction absent clear support.

■ In light of appellants' showing with respect to a defense on the merits, and considering all relevant circumstances as to whether "it is equitable to excuse the failure to plead," we hold that the circuit court abused its discretion in failing to vacate the order of default. Appellants, in their motion to vacate the order of default, stated that counsel for appellants agreed to accept service; counsel for the parties discussed the possibility of settlement after the deposition of Bonnie Cruikshank–Wallace on March 31, 2000; and that counsel prepared responsive pleadings but "inadvertently" failed to file them. Subsequently, in the affidavit of William F. Riddle, affiant stated that, beginning in early 1999, he represented Great Christian Books, Inc. and William Wallace in the confessed judgment actions; he agreed to accept service in this case; in March, 2000 counsel were engaged in settlement discussions with respect to all cases, and affiant believed that a settlement was likely and that this case would be dismissed and "therefore" affiant failed to respond to the complaint in a timely manner. Counsel does not suggest that there was an agreement to extend the time for pleading; only that the existence of settlement discussions was the reason for inadvertence.

Further, there was no suggestion by appellee that appellants or their counsel acted wilfully or contumaciously. The motion to vacate was filed promptly; there was no continuing pattern of neglect. There was no suggestion of any harm caused to appellee as a result of the untimely filing. Under these circumstances, failure to vacate the order of default was punitive, and the court abused its discretion.

**JUDGMENTS VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**